## N. J. SALTER v. STATE.

No. 126.    Opinion Filed June 26, 1909.

(102 Pac. 719.)

1.    **CONSTITUTIONAL LAW—Personal Liberty and Security—Liberal Construction.** In the Constitution of Oklahoma, the utmost pains have been taken to preserve all the securities of individual liberty, and all provisions of the Constitution designed to safeguard the liberty and security of the citizen should be liberally construed by the courts.

2.    **SAME—Constitutionality of Statutes.** While it is the duty of the courts to uphold any statute enacted in the ordinary exercise of the legislative power, unless the constitutional objections to it are clear and indisputable, yet when it is proposed by a statute to deny, modify, or diminish a right or immunity securel to the people by a clear and explicit constitutional provision, then the presumption is against the validity of the statute, and the courts should enforce the constitutional provision.

3.    **INDICTMENT AND INFORMATION—Misdemeanor Information—Verification—Information and Belief.** The Constitution of the state of Oklahoma, being section 30 (Bunn's Ed. sec. 39) of the Bill of Rights, provides that: "The right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches or seizures shall not be violated; and no warrant shall issue but upon probable cause supported by oath or affirmation, describing as particularly as may be the place to be searched and the person or thing to be seized." Therefore a statute of Oklahoma Territory, which provides that in misdemeanor cases a warrant may issue upon information, which has been verified only on information and belief, and without any other evidence, is repugnant to the foregoing provision of the Constitution, and is null and void.

4. **SAME.** A verification to an information, charging a misdemeanor and stating that affiant "declares that the statements set forth in the above information are true, as he is informed and verily believes," is nothing more than the expression of an opinion, and is not sufficient to justify the issuance of a warrant of arrest; and an information so verified is insufficient to support a judgment of conviction.

5. **SAME.** In Oklahoma an information charging a misdemeanor must be verified by oath of the prosecuting attorney, or by the oath or affirmation of some person competent to testify, presenting the facts to the magistrate, before a warrant for the party charged may issue.

(Syllabus by the Court.)

*Error from Carter County Court; I. R. Mason, Judge.*

N. J. · (Doc.) Salter was convicted of a violation of the prohibition law, and he brings error. Reversed and remanded, with directions.

The plaintiff in error, N. J. (Doc.) Salter (hereinafter designated defendant) was, at the January, 1908, term of the county court of Carter county, tried and convicted of violating a provision of the prohibition ordinance, and sentenced to pay a fine of $100, and that he be imprisoned in the county jail of Carter county for a period of 60 days. This conviction was had on an information filed in the county court of Carter county by the county attorney of said county, on the 26th day of December, 1907, wherein defendant was charged with "unlawfully selling to one C. S. Holt certain intoxicating liquor, to wit, one pint of whisky for the price and sum of $1." The information was verified as follows, on information and belief, and the county attorney did not verify the same by his own oath:

"State of Oklahoma, Carter County—ss.: J. H. Akers being duly sworn on oath declares that the statements set forth in the above information are true as he is informed and verily believes [Signed.] J. H. Akers.

"Subscribed and sworn to before me this 26th day of December, 1907. I. R. Mason, County Judge."

On January 24, 1908, defendant waived arraignment, and

2 Cr.—30

entered a plea of not guilty; the case was called for trial; defendant demanded a jury. C. S. Holt, being sworn, was called as the first witness for the state, whereupon defendant by his counsel interposed the following objection:

"Now comes the defendant, and objects to the introduction of testimony in this case, for the reason that this complaint is not sufficiently verified to put defendant upon trial." .

Which motion was overruled by the court, to which ruling defendant excepted. After hearing the evidence and receiving the instructions of the court, the jury retired, and returned their verdict, finding defendant guilty as charged. On January 25, 1908, defendant filed his motion for a new trial, which motion, omitting the formal parts, reads as follows:

"Motion for New Trial. Now comes the defendant, Doc. Salter, and moves the court to grant him a new trial, for the reason that the information on which he was tried was not sufficiently verified in this: That it was not positively sworn to, same being sworn to on information and belief contrary to article 4 of the amendments of the Constitution of the United States, which reads as follows: 'The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized.' Also section 30 (Bunn's Ed. § 39) of the Constitution of the state of Oklahoma, which reads as follows: 'The right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches or seizures shall not be violated; and no warrant shall issue but upon probable cause supported by oath or affirmation, describing as particularly as may be the place to be searched and the person or thing to be seized.' [Signed.] Brown & Turner, Attorneys for defendant."

On January 27, 1908, before judgment, defendant filed his motion in arrest of judgment, which motion set forth the same grounds that are set forth in defendant's motion for a new trial. The court overruled the motion for new trial; also the motion in arrest of judgment. Exceptions were taken to each ruling,

and the court pronounced judgment. On March 6, 1908, defendant's petition in error and case-made were filed in the Supreme Court. Upon the organization of the Criminal Court of Appeals said cause was duly transferred, as by law provided, to this court. At the March term, said cause was submitted, and is now before this court for review.

*R. F. Turner* and *H. H. Brown,* for plaintiff in error.—On question of verification of information: *Ex parte Burford,* 1 Cranch, C. C. 276, Fed. Cas. No. 2,148; *Miller v. U. S.,* 8 Okla. 315, 57 Pac. 836; *Mulkins v. U. S.,* 10 Okla. 288, 61 Pac. 925.

*Fred S. Caldwell,* for the State.—

On question of waiver of defects by failure to demur to information: *Territory v. Perkins.* 10 Okla. 506; *Territory v. Richardson,* 9 Okla. 579; *People v. Villarino* (Cal.) 5 Pac. 154; *State v. Barr* (Kan.) 38 Pac. 289.

On question of verification of information: *In re McNaught,* 1 Okla. Cr. 528; *State v. Guglielmo* (Or.) 79 Pac. 577, 80 Pac. 103; 22 Cyc. 281 and Note 79.

DOYLE, JUDGE. (after stating the facts as above). This case involves an apparent incompatibility between that clause of the Constitution contained in Bill of Rights, § 30 (Bunn's Ed. § 39) : "The right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches or seizures shall not be violated; and no warrants shall issue but upon probable cause supported by oath or affirmation, describing as particularly as may be the place to be searched and the person or thing to be seized"—and the proviso in that provision of Procedure, Criminal, § 5306 (Wilson's Rev. & Ann. St.), which provides, in part, that: "All informations shall be verified by the oath of the prosecuting attorney, complainant or some other person: Provided, that when an information in any case is verified by the county attorney, it shall be sufficient if the verification be upon information and belief." The record shows that upon the information, verified only on information and belief, and without

any further or other evidence that an offense had been committed, or that the defendant was probably guilty of any violation of law, a warrant was issued out of the county court of Carter county, commanding the arrest of defendant, and that he be brought before the court to answer this information. When the state offered its proof, at the outset an objection was interposed, and after the verdict, and before judgment, the motions for a new trial and in arrest of judgment were made. The assignments of error are predicated upon the rulings of the court on the objection interposed and the two motions, and present but one proposition to be considered by the court.

The Constitution of this state authorizes the prosecution of crimes by information, but with the following restrictions as to felonies: Section 17, Bill of Rights, declares:

"No person shall be prosecuted for a felony by information without having had a preliminary examination before an examining magistrate, or having waived such preliminary examination. Prosecutions may be instituted in courts not of record upon a duly verified complaint."

Our statutes provide (section 5239, Wilson's Rev. & Ann. St.):

"When an information, verified by oath or affirmation, is laid before a magistrate, of the commission of a public offense, he must, if satisfied therefrom that the offense complained of has been committed, and that there is reasonable ground to believe that the defendant has committed it, issue a warrant of arrest."

And section 5305, Wilson's Rev. & Ann. St.:

"If the offense be a misdemeanor punishable by a fine of more than one hundred dollars, or by imprisonment for more than thirty days, or by both fine and imprisonment, it shall be prosecuted by information."

The office of an information charging a misdemeanor under the criminal procedure of Oklahoma is not only to give the county court jurisdiction to issue the warrant of arrest, but it is also the pleading, on the part of the state, informing the defendant of what offense he is charged with, for the purpose of the trial. The question presented is, Does the verification of an information in

a misdemeanor case, on information and belief, furnish such probable cause and is it supported by such an oath or affirmation as is required by section 30 of the Bill of Rights?

Before considering this constitutional provision of the Bill of Rights which is almost identical with article 4 of the amendments to the Constitution of the United States, the construction which has been given by the Supreme Court of the United States and the other federal courts to said article 4 will be pertinent and material in passing on the question raised in this case.

The first case in which there was any consideration of this constitutional amendment is *Ex parte Burford,* 3 Cranch, 448, 2 L. Ed. 495. That great jurist Chief Justice Marshall, speaking for the court *in arguendo,* said:

"If the charge against him was malicious, or grounded on perjury, whom could he sue for the malicious prosecution, or whom could he indict for perjury?"

And he concludes that:

"The judges of this court were unanimously of the opinion that the warrant of commitment was illegal, for want of some good cause certain, supported by oath."

In the case of *United States v. Tureaud* (C. C.) 20 Fed. 621, Billings, Judge, says:

"The affidavits, the sufficiency of which are to be determined, are identical, and are as follows:

" 'Geo. A. Dice, being duly sworn, says: All the statements and averments in the foregoing information are true, as he verily believes.                              GEO. A. DICE.

" 'Sworn to and subscribed before me this twentieth day of May, 1884.                E. R. HUNT, U. S. Commissioner.'

"The point, and the sole point, to be passed upon is whether this affidavit furnishes such a 'probable cause,' and is supported by such an oath, as is required by the fourth amendment of the Constitution. It is true it is an affidavit subjoined to and made the basis of an information. It is also true that under the usages of the government of Great Britain this information belongs to the class of formal accusations which could be made by the king in his courts without any evidence, and against all evidence. But the

adoption of the fourth amendment affected all kinds and modes of prosecution for crimes or offenses; for there can be no legal pursuit of accused persons without apprehension. All prosecutions require warrants. An information, a suggestion of a criminal charge to a court, is a vain thing, unless it is followed by a *capias.* The procedure by information, therefore, after it was acted upon by this amendment, lost its prerogative function or quality. It could not thereafter be the vehicle of preferring any arbitrary accusation—not by the king, because we have in the department of criminal law no successor to him, so far as he represented a right to institute, if it pleased him, unsupported incriminations; nor by the district attorney, nor by any other officer of the United States, for the Constitution has said, in effect, that in no way nor manner shall magistrates or courts issue warrants, except upon proofs, which are to be upon oath and make probable excuse. See *State v. Mitchell,* 1 Bay (S. C.) 267, and 1 Op. Attys. Gen. 229, where Mr. Attorney General Wirt holds that even the president is controlled by this amendment. All arbitrary informations, all informations which spring into existence simply because the king and his attorney elected to present them, indeed all informations, except those supported by proof upon oath, which constitute probable cause, by this constitutional provision were expunged from permissible procedure, and the learning about informations was left valuable only as showing what proofs were considered adequate, in cases where proofs had to be presented in order to have them acted upon by the judicial discretion or mind.

"The master of the crown, whose duties with regard to informations to be sustained by proofs corresponded with district attorneys of the United States in the courts of the Union, was required to produce to the court 'such legal evidence of the offense having been committed by the defendant as would warrant a grand jury in finding a true bill against the defendant; otherwise he will be left to his ordinary remedy by action or indictment.' Cole, Crim. Inf., marginal paging 15, 54 Law Library. This is the measure of proof which is held to be requisite by the courts of the United States under the fourth amendment. See *Ex parte Burford,* 1 Cranch, C. C. 276, Fed Cas. No. 2,148. Cranch, J., whose dissenting opinion was adopted by the Supreme Court, said: 'It [the warrant] ought to have stated the names of the persons on whose testimony it was granted, and the nature

of the testimony, so that this court may know what kind of ill fame it was, and whether the justices have exercised their discretion properly.' When the case reached the Supreme Court (3 Cranch, 453, 2 L. Ed. 495), 'the judges of that court were unanimously of opinion that the warrant of commitment was illegal for want of stating some good cause certain, supported by affidavit.'

"The rule which must govern this court, and all magistrates who authorize arrests under the Constitution of the United States, as to the foundation for the issuance of warrants, is uniform, and is thus stated by Mr. Justice Bradley in the matter of a Rule of Court upon the subject (3 Wood, 502, Fed. Cas. No. 12,126): 'After an examination of the subject, we have come to the conclusion that such an affidavit does not meet the requirements of the Constitution, which, by the fourth article of the amendments, declares that the right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures shall not be violated, and that no warrants shall issue but upon probable cause, supported by oath or affirmation, describing the place to be searched and the persons to be seized. It is plain from this fundamental enunciation, as well as from the books of authority on criminal matters in the common law, that the probable cause referred to, and which must be supported by oath or affirmation, must be submitted to the committing magistrate himself, and not merely to an official accuser, so that he, the magistrate, may exercise his own judgment on the sufficiency of the ground for believing the accused person guilty; and this ground must amount to a probable cause of belief or suspicion of the party's guilt. In other words, the magistrate ought to have before him the oath of the real accuser, presented either in the form of an affidavit, or taken down by himself on a personal examination, exhibiting the facts on which the charge is based, and on which the belief or suspicion of guilt is founded.'

"The rule which was established was that the warrant should issue 'only upon probable cause, supported by oath or affirmation of the person making the charge, in which should be stated the facts within his own knowledge constituting the grounds of such belief or suspicion.' In New York the statute required the warrant to contain, in the very words of the fourth amendment, a recital of 'probable cause, supported by oath or affirmation.' In *Blythe v. Tompkins*, 2 Abb. (N. Y.) 468; Abb. N. Y. Dig. *verbo*, 'Arrest' (section 324) the warrant recited a complaint on

oath by A. and B. that on or about a certain day, D., 'as the said witnesses had good reason to believe, and do believe,' committed the offense. The court held the warrant on its face void, and that 'the mere belief of witnesses was insufficient.' In *Vannatta v. State*, 31 Ind. 210, it was held that an information, in which the district attorney charges the offense, 'as he verily believes,' is bad on a motion to quash. In this last case the court, in effect, say that a verdict of guilty would not establish probable cause, for they say (page 211) : 'A verdict that the defendant is guilty as charged would amount to nothing. It would only show that the district attorney believed that the offense had been committed.' The 'probable cause supported by oath or affirmation,' prescribed by the fundamental law of the United States, is, then, the oaths or affidavits of those persons who, of their own knowledge, depose to the facts which constitute the offense."

This question arose in *State v. Gleason*, 32 Kan. 245, 4 Pac. 363. The Criminal Code of Kansas contained a provision permitting county attorneys to verify complaints on information and belief. Chief Justice Horton, delivering the opinion of the court, in part says:

"Of course it must be conceded that the Constitution is the superior and paramount law, and that said paragraph 15 is declaratory of the fundamental rights of the citizen, and is intended to protect him in his liberty and property against the arbitrary action of those in authority. So long as this section is in force the principles therein declared are to remain absolute and unchangeable rules of action and decision. The Legislature cannot infringe thereon, and the courts must yield implicit obedience thereto. If no warrant shall issue but upon probable cause supported by oath or affirmation, the support must be something more than hearsay or belief. Where a person or officer states upon oath 'that the several allegations and facts set forth in the foregoing information are true, as he has been informed and verily believes,' he may have no knowledge of, or information upon, the subject, except mere hearsay, and yet he can conscientiously make such declaration. *Atchison v. Bartholow*, 4 Kan. 124. A complaint thus verified proves nothing. It does not state facts, but only the affiant's hearsay knowledge and belief. It is not a complaint, an information, or a declaration supported by an oath or

affirmation. *Atchison v. Bartholow, supra; Thompson v. Higginbotham,* 18 Kan. 42.

"At common law an information might be filed under the English practice against persons charged with misdemeanors, yet no rule was granted in regard to such cases, except upon such evidence as would, uncontradicted, make out the offense beyond a doubt. Arch. Cr. Pl. 76; *Rex v. Willett,* 6 T. R. 204; *Rex v. Williamson,* 3 B. & Ald. 582; *Rex. v. Bull,* 1 Wils. 93; *Rex v. Hilbers,* 2 Chit. R. 163; *Regina v. Baldwin,* 8 A. & E. 168; *Ex parte Williams,* cited 1 Harr. Dig. 2268; 1 Chit. Cr. L. 856, 857.

"Said paragraph 15 is little more than the affirmation of the great constitutional doctrine of the common law. Article 4 of the amendments to the Constitution of the United States is almost identical with paragraph 15; and Story says that: 'This provision seems indispensable to the full enjoyment of the rights of personal security, personal liberty, and private property, * * * and its introduction into the amendments was doubtless occasioned by the strong sensibility excited, both in England and America, upon the subject of general warrants, almost upon the eve of the American Revolution.' 2 Story on the Const. par. 1902. If a warrant, in the first instance, may issue upon mere hearsay or belief, then all the guards of the common law and of the Bill of Rights of our own Constitution to protect the liberty and property of the citizen against arbitrary power, are swept away. There is no necessity for going so far, and the Constitution warrants no such conclusion. The expressions of the Bill of Rights are very plain and very comprehensive, and cannot be misunderstood. The oath or affirmation of a complaint or information upon which a defendant is arrested in the first instance must set forth that the allegations and facts therein contained are true."

In the case of *People v. Heffron,* 53 Mich. 527, 19 N. W. 170, it was held that:

"An affidavit, alleging that the affiant has good reason to believe, and does believe, that a certain person has committed an offense, is not sufficient to authorize a justice to issue a warrant for his arrest. The affidavit must be upon knowledge, and not mere conjecture."

In the opinion of the court it is said:

"This affidavit, within the repeated rulings of this court, as well as the most elementary principles of criminal law, is entirely

insufficient to confer any jurisdiction upon a justice to issue a warrant for the arrest of the respondent. The complaint must set up the facts constituting the offense on the knowledge of the person making the complaint, and if he does not know them, other witnesses must be examined who do know them; and no person can be arrested on the mere belief of the person making the complaint. The liberty of the citizen is not held upon so slender a tenure as that."

In the case of *Miller v. U. S.*, 8 Okla. 315, 57 Pac. 836, Justice McAtee, expressing the opinion of the court, in part says:

"It has been repeatedly and invariably held by the Supreme Court of the United States, and by the Supreme Courts of the various states, so far as we have been able to find, that the provisions of guaranty that warrants shall not issue but upon probable cause, supported by oath or affirmation, is not meant to be an oath which is made upon information and belief, and that such an affidavit merely expresses the private opinion of the informant."

After citing numerous cases the learned justice concludes by saying on the authority of the fourth article of the amendments to the Constitution of the United States, and of opinions of the Supreme Courts, which we have cited, together with the opinions which have been cited in those cases, that the Legislature had no power to make this provision, and that an arrest upon a criminal information must be supported by an oath or affirmation from some one who knows of the matter charged, and not upon an oath which is no stronger than information and belief.

In the case of *Monroe v. State*, 137 Ala. 88, 34 South. 382, McClellan, Chief Justice, delivered the opinion of the court as follows:

"The affirmation of reasons to believe, and belief, in a complaint, is not the equivalent of the affirmation of the existence of probable cause to believe and belief that a designated offense was committed by a party named. It is of easy conception that a person might have reasons to believe that a fact exists, and therefore believe that it does exist, without having that probable cause for belief of its existence, the affirmation of which is the necessary basis, under the Constitution and statute, for a warrant of arrest and prosecution to conviction. The complaint in this case affirms

only that the affiant 'has reason to believe, and does believe,' that the defendant committed a designated offense. It did not authorize the issuance of the warrant of arrest, it does not support the judgment of conviction, and no valid judgment can be rendered upon it. The judgment will therefore be reversed, and a judgment will be here entered discharging the defendant. *Johnson v. State*, 82 Ala. 29, 2 South. 466; *Miles v. State*, 94 Ala. 106, 11 South. 403; *Butler v. State*, 130 Ala. 127, 30 South. 338."

In the case of *Swart v. Kimball*, 43 Mich. 451, 5 N. W. 640, Justice Cooley characterizes this form of accusation as follows:

"Charges are not verified by an affidavit that somebody is informed and believes they are true. This is mere evasion of the law. The most improbable stories may be believed of any one, and the man most free from any reasonable suspicion of guilt is not safe if he holds his freedom at the mercy of any man, miles off, who will swear that he has been informed and believes in his guilt. It is easy to tell falsehoods, and those who are least fitted to judge of their credibility are generally the very persons who will believe them because they are told. But to substantiate charges within the meaning of the law evidence is required, and not merely suspicions or information or belief."

See, also, *Mulkins v. U. S.*, 10 Okla. 288, 61 Pac. 925; *U. S. v. Polite* (D. C.) 35 Fed. 58; *In re Dana* (D. C.) 68 Fed. 895; *United States v. Collins* (D. C.) 79 Fed. 65; *U. S. v. Sapinkow* (C. C.) 90 Fed. 654; *Johnson v. U. S.*, 87 Fed. 187, 30 C. C. A. 612; *State v. Wimbush*, 9 S. C. 309; *People v. Heffron*, 53 Mich. 527, 19 N. W. 170; *Ex parte Dimmig*, 74 Cal. 164, 15 Pac. 619; *State v. Boulter*, 3 Wyo. 236, 39 Pac. 883; *Lippman v. People*, 175 Ill. 101, 51 N. E. 872.

In the light of the opinions herein quoted, it must be conceded, as a settled principle of American law, that a complaint or information, verified only on information and belief, is insufficient to authorize the issuance of a warrant of arrest; and a warrant so issued is without authority of law, and is wholly void. And a provision of the Criminal Code of Oklahoma Territory, that purports to authorize county attorneys to verify informations in misdemeanor cases on information and belief is repugnant to

the Constitution of Oklahoma, and is in contravention of said section 30 of the Bill of Rights. The liberties of the people do not rest upon such uncertain and insecure basis as the belief, opinion, or surmise of a prosecuting officer that a misdemeanor has been committed. If so, it would be, in effect, a revival of the odious general warrants, which placed the liberty of every man in the hands of every petty officer, and which long ago received judicial condemnation. To prevent their use and exercise of such arbitrary power, at the discretion of an officer, "it has not been deemed unwise to repeat in the state Constitutions, as well as in the Constitution of the United States, the principles already settled in the common law upon this vital point in civil liberty." Cooley, Const. Lim. 364, and notes.

The fundamental requirements of the ordinance of the Bill of Rights are that the facts and circumstances tending to show criminality should be made to appear to a magistrate himself, by affidavits, complaint, or information positively verified by oath or affirmation and that the magistrate must himself find in the facts thus shown probable cause and reasonable belief that the defendant has committed an offense before a warrant of arrest shall issue. Section 5306, Wilson's Rev. & Ann. St. requires that: "All informations shall be verified by the oath of the prosecuting attorney, complainant, or some other person," etc. We do not wish, however, to be understood as holding that the information must be sworn to by persons having actual knowledge of the offense charged. See *Ex parte Flowers, ante,* p. 430, 101 Pac. 860. The evidence of probable cause, however, must be made upon oath or affirmation setting forth the facts constituting the offense, or facts and circumstances showing that a misdemeanor has been committed, and that there is probable cause for believing that the accused is guilty, and making it appear to the court that the complaint is based on something more than mere information, belief, or suspicion.

Counsel for the state in his brief contends that:

"Under the Constitution of this state the information filed

in this case, and upon which the defendant was prosecuted, is amply sufficient in all respects. Said information begins as follows: 'Comes now James H. Mathers, the duly qualified and acting county attorney in and for Carter county, state of Oklahoma, and on his official oath gives the county court in and for said Carter county and state of Oklahoma to know and be informed that the above-named Doc. Salters,' etc. An information of this sort filed by a prosecuting attorney of this state, requires no verification other than the official oath of the public prosecutor"—citing and quoting copiously from the case of *State v. Guglielmo*, 46 Or. 250, 79 Pac. 577, 80 Pac. 103; also, 22 Cyc. 281.

This contention is obviously without merit. The error of the argument is so self-evident as to require only a passing notice. Counsel overlooks the fact that by the adoption of the fourth amendment of the federal Constitution the procedure by information lost is prerogative function or quality. It could not thereafter be the vehicle of preferring any arbitrary accusation. *U. S. v. Tureaud, supra.* The constitutional provision in the Bill of Rights is but a reiteration of this essential safeguard of the liberty and security of the citizen against the arbitrary action of those in authority. Such pernicious practice may suit the purpose of despotic power, but is alien to the pure atmosphere of political liberty and personal freedom. The Constitution expressly requires a showing of cause before a warrant shall issue, and the constitutional safeguards for security and liberty cannot in this manner be abrogated or abridged. They must stand as adopted by the people.

Counsel for the state further contends that:

"Without conceding that said information is on its face defective, in that it is not properly and sufficiently verified, I submit that defendant has waived any such defects or irregularities, in that he did not demur to the information at the proper time."

We cannot agree with counsel for the state; and while some authorities hold that, where a plea of not guilty is entered, and no objection is made to the insufficiency of the information, and competent evidence is received, supporting the averments thereof, the court acquires jurisdiction, however, in this case while the bet-

ter practice would have been to have filed a motion to quash, or a demurrer to the information, the objection as made was to a fundamental defect, and not to a matter of form, and was therefore sufficient. See *Mulkins v. United States, supra.*

We have a Constitution in which the utmost pains have been taken to preserve all the securities of individual liberty, and the courts cannot refuse obedience to its mandates. The Legislature cannot alter, annul, or avoid the constitutional safeguards of person and property set forth in the Bill of Rights. They are beyond the reach of any legislative enactment. And the argument that defendant's failure to comply with a statutory provision of procedure is a waiver of his constitutional rights is fallacious. Expediency has no force as an argument in a court of justice. To countenance such a theory would be to strike a fatal blow to constitutional safeguards. The abuses and perversions of sound principles which would creep into the law by yielding to arguments like these—to what is supposed to be necessary for the public good —cannot be better stated than it was by Justice Bradley in *Boyd v. U. S.,* 116 U. S. 616, 6 Sup. Ct. 524, 29 L. Ed. 746. After reviewing those famous landmarks of liberty and law, the *Wilkes Case,* and the case of *Intick v. Farrington and Three Other King's Messengers,* 19 How. State Trials, 1029, and the history of the fourth and fifth amendments to the Constitution of the United States, the learned justice continues as follows:

"It may be that it is the obnoxious thing in its mildest and least repulsive form; but illegitimate and unconstitutional practices get their first footing in that way, namely, by silent approaches and slight deviations from legal modes of procedure. This can only be obviated by adhering to the rule that constitutional provisions for the security of person and property should be liberally construed. A close and literal construction deprives them of half of their efficacy, and leads to gradual depreciation of the right, as if it consisted more in sound than substance. It is the duty of courts to be watchful for the constitutional rights of the citizens, and against any stealthy encroachments thereon. Their motto should be *'obsta principiis.'*"

And the same great and learned justice adds:

"The freedom of thought, of speech, and of the press; the right to bear arms; exemptions from military dictations; security of the person and of the home; the right to speedy and public trial by jury; protection against oppressive bail and cruel punishment—are, together with exemption from self-crimination, the essential and inseparable features of English liberty. Each one of these features has been involved in the struggle above referred to in England within the century and a half immediately preceding the adoption of the Constitution, and the contests were fresh in the memories and traditions of the people at that time."

It is sometimes said that, if the validity of a statute is merely doubtful, if its unconstitutionality is not plainly obvious, the courts should not be ready to defeat the action of the legislative branch of the government; and it must be conceded that, when such questions arise, under the ordinary exercise of the legislative power, it is plainly the duty of the courts not to dispense with the operation of laws formally enacted, unless the constitutional objections are clear and indisputable. On the other hand, when the courts are confronted with a clear and explicit provision of the Constitution, and when it is proposed to avoid or modify or alter the same by a legislative act, it is their plain duty to enforce the constitutional provision, unless it is clear that such legislative act does not infringe it in letter or spirit.

Section 2, art. 24, of the Schedule of the Constitution of Oklahoma provides:

"Sec. 2. All laws in force in the territory of Oklahoma at the time of the admission of the state into the Union, which are not repugnant to this Constitution, and which are not locally inapplicable, shall be extended to and remain in force in the state of Oklahoma, until they expire by their own limitation or are altered or repealed by law."

The pertinent provision of the Criminal Code of Oklahoma Territory has been by the Supreme Court of Oklahoma Territory declared unconstitutional and void in the cases of *U. S. v. Miller* and *Mulkins v. U. S., supra,* and under the foregoing clause of said Schedule we believe said provision to be clearly repugnant

to the Constitution. It is manifestly in conflict with one of the plainest provisions of the Bill of Rights. It, therefore, did not become a part of the adopted laws of this state.

As the question presented is not only important in the determination of the present case, but is a very grave question of constitutional law, involving the right of personal liberty and the security of the citizen, we have reviewed and carefully considered all the adjudications on this question; and, believing that the conclusion reached in the case quoted is supported by reason and authority, we adhere to, and reaffirm, the legal principles thus announced. But we limit the decision to informations charging misdemeanors. Informations in felony cases are to be tested, as near as may be, by the statutes regulating indictments, and we do not wish to indicate in advance what we should hold in a case where the information charges a felony. It is our opinion, therefore, that the information did not authorize the issuance of the warrant of arrest. It does not support the judgment of conviction, and no valid judgment can be rendered upon it.

The judgment will therefore be reversed, and the cause remanded to the county court of Carter county, with directions to dismiss the case.

BAKER, JUDGE, concurs, and FURMAN, PRESIDING JUDGE, concurs in the conclusion only.