### GEORGE W. MILLER v. THE UNITED STATES.

(Filed June 15, 1899.)

1. CONSTITUTIONAL LAW,—*Warrant—Void Statute.* The fourth article of the amendments to the constitution of the United States provides that "no warrant shall issue but upon probable cause, supported by oath or affirmation;" and therefore an act of the legislature which provides that a warrant may issue upon a complaint which has been verified by a county attorney only upon information and belief, and that a warrant for the arrest of the party charged therein may issue thereupon, is null and void.

2. COMPLAINT—*Verification.* A statement that the affiant is informed and believes the facts stated in the complaint to be true is no more than the expression of an opinion, and one which may conscientiously be made, and yet prove nothing, and be based upon no facts or knowledge.

3. INFORMATION—*Evidence.* The facts themselves upon which the warrant should issue ought to be presented to the magistrate by affidavit or competent evidence, and not merely to the person who makes the accusation.

4. CRIMINAL CAUSE—*Continuance—Error.* The information in this case was filed December 1, 1897, the defendant was arrested at noon December 2, 1897, and first brought into court at 5 o'clock on that day, and, without the opportunity of consulting counsel, answered that he was not guilty, when his case was set down for hearing on the following morning at 9 o'clock. His counsel, to whom he telegraphed, reached Perry, where the court was held, at midnight of December 2, and he had no access to the information or proceedings in the case until 9 o'clock on the morning of December 3, when the case was set for trial. His application for a continuance showed the existence of testimony material to his defense. Subpoenas were issued for him on the morning of December 3, as soon as his counsel could get them issued, but the court refused to give him further time, the United States attorney having announced that he was ready for trial, and the trial was thereupon immediately proceeded with. *Held,* that this was error.

(Syllabus by the Court.)

*Error from the District Court of Noble County; before A. G. C. Bierer, District Judge.*

*Pollock & Lafferty,* for plaintiff in error.

*S. L. Overstreet, United States Attorney,* for defendant in error.

George W. Miller was convicted of larceny, and brings error.   Reversed.

### STATEMENT OF THE CASE.

This was an information filed by the United States attorney on the 1st day of December, 1897, in the district court of Noble county, charging the appellant and one James Arnold with the theft of a cow in the Indian country, attached to Noble county for judicial purposes, and charging that the cow was the property of P. S. Witherspoon and James Beattie. The information was verified by "Roy Hoffman, who, being first duly sworn, on his oath says that he is informed and believes that the statements contained in the above information are true." The defendant Miller was arrested on December 2, taken to Perry, and on the evening of that day was arraigned, without counsel, and entered a plea of not guilty. On the 3d day of December the defendant filed his motion for a continuance, which set forth material testimony of witnesses whom he had reason to believe he could procure if he had time to procure them, to be used at the hearing, and, the court having given leave to the defendant to withdraw the plea of not guilty, a motion was filed to set aside the information, which, together with the motion for continuance, were overruled by the court. It appeared from the application for continuance, upon the oath of the defendant, that he was not arrested on this charge until December 2, 1897, at 12 o'clock, noon; was brought immediately to the court at Perry, and that

about the hour of 5 o'clock, before he had an opportunity to obtain counsel or confer with his attorneys, he was brought into court and arraigned at the bar to answer to the charge in the information; that to the information he said he was not guilty, and thereupon the case was set down for hearing the next morning, December 3, 1897, at 9 o'clock; that as soon as he was arrested he had sent for his attorney, but that, the train being late, his attorney did not arrive at the city of Perry until midnight of December 2, 1897, and had had no opportunity to examine the papers in the case until the court opened on the morning of December 3, 1897. He said that George Tignor, who resided in the state of Louisiana, and William Estes, who resided in the state of Missouri, and G. W. Carson, who had a lease in the Ponca reservation but who resided at Rocky Comfort, Mo., where he now is, and George Miller, Jr., and W. T. Miller and Harry Kendall, who resided in the Ponca reservation, were material witnesses in his behalf, and were absent without his procurement or consent; that Tignor would testify, if present, that he was in the Territory in the months of June and July, 1897, at the time of the alleged larceny, and that he was informed by the defendant Miller that a beef, the cow alleged to have been stolen, was hanging at some distance from them, and that they together joined in an investigation of the matter; that Carson, if present, would testify that he was at the ranch headquarters of the defendant Miller at the time in question, and knew that Miller was at his ranch on the afternoon and evening of the day of the taking, and had no knowledge thereof; that George Miller, Jr., and W. T. Miller, if present, would testify that the defendant Miller was present at his own ranch, and not over on that part of the ranch

where the beef which was stolen was found, during the afternoon or evening of the day it was said to have been killed. The application for continuance further showed that the witnesses could all be procured if time was given, and that the testimony they would give was true, and that, if the cause was continued, the defendant would have all the witnesses present at the trial.

A demurrer to the information was also overruled, and exceptions reserved to each ruling. Process had been isued at the time of the application for a continuance for witnesses residing within the Territory, which had not yet been returned. The court refused to stay the proceedings or grant further time until the marshal could make a return upon the subpoenas issued upon the 3d day of December, and the case proceeded to trial upon that day, and was given to the jury, which returned a verdict on the morning of the 4th of December; whereupon the case was immediately set down for judgment upon the morning of the 6th (the 5th being Sunday,) when the defendant was sentenced to pay a fine of $300, and to be confined in the federal jail for the period of six months.

The defendant Arnold was an employe of the plaintiff in error, represented himself as an accomplice with the appellant in the commission of the offense sought to be charged, and made what purported to be a confession, implicating the appellant in the commission of the offense with himself. Before going to trial, the defendant in error was permitted to amend the information in such a manner as to show that the cow alleged to have been stolen was not the property of the persons charged in the information, but was the property of P. S.

Witherspoon, F. Witherspoon, and James Beattie jointly, which was also verified upon information and belief only.

Opinion of the court by

McATEE, J.: The first proposition argued in the brief of the appellant upon the assignments of error is that the trial court erred in overrruling the motions to set aside the demurrers to the information and amended information, for the reason that there was no verification except that which was made by Mr. Hoffman, who was the assistant United States attorney, upon information and belief. It is provided in article 4 of the amendments to the constitution of the United States that "the right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated; and no warrants shall issue but upon probable cause, supported by oath or affirmation and particularly describing the place to be searched and the persons or things to be seized."

It has been repeatedly and invariably held by the supreme court of the United States and by the supreme courts of the various states, so far as we have been able to find, that the provisions of the guaranty that warrants shall not issue but upon probable cause, supported by oath or affirmation, is not meant to be an oath which is made upon information and belief, and that such an affidavit merely expresses the private opinion of the informant. The point appears to have been covered in *Ex parte Burford*, 3 Cranch, 448, by Chief Justice Marshall, in an opinion which indicates that, as to the oath prescribed in article 4 of the amendments to the constitution of the United States, in order to justify an arrest, the complaining witness ought to be put in such a situation that, if

the accusation is untrue, it may be made the ground of a proceeding for malicious prosecution, or of an indictment for perjury, which would be impossible if the oath should be interpreted to mean simply an oath upon information and belief. The argument, in the language of that distinguished chief justice, is expressed in the words: "If the charge against him was malicious, or grounded on perjury, whom could he sue for the malicious prosecution, or whom could he indict for perjury?" And he concludes that "the judges of this court were unanimously of the opinion that the warrant of commitment was illegal, for want of stating some good cause certain, supported by oath."

In the case of *In re Rule of Court*, 3 Woods, 502, Fed. Cas. No. 12,126, Justice Bradley said that, "after an examination of the subject, we have come to the conclusion that such an affidavit does not meet the requirements of the constitution, which by the fourth article of the amendments declares that 'the right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated; and no warrants shall issue but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized.' It is plain from this elementary enunciation, as well as from the books of authority on criminal matters in the common law, that the probable cause referred to, and which must be supported by oath or affirmation, must be submitted to the magistrate himself, and not merely to an official accuser, so that he, (the magistrate) may exercise his own judgment on the sufficiency of the ground for believing the accused person guilty, and this ground must amount to a probable cause

of belief or suspicion of the party's guilt. In other words, the magistrate ought to have before him the oath of the real accuser, present either in the form of an affidavit, or taken down by himself on the personal examination, exhibiting the facts on which the charge is based, and on which the belief or suspicion of guilt is founded."

It is provided in section 1014 of the Revised Statutes of the United States of 1878, that, "for any crime or offense against the United States, the offender may, by any justice or judge of the United States, or by any commissioner of the circuit court to take bail, or by any chancellor, judge of a supreme or superior court, chief or first judge of common pleas, mayor of a city, justice of the peace, or other magistrate, of any state where he may be found, and agreeably to the usual mode of process against offenders in such state, and at the expense of the United States, be arrested and imprisoned, or bailed, as the case may be, for trial before such court of the United States as by law has cognizance of the offence." The question we are now considering arose upon the interpretation of this statute in *U. S. v. Tureaud*, 20 Fed. 621, upon motions to quash the information upon the ground of the insufficiency of the affidavit. The court held that informations must be based upon affidavits which show probable cause arising from facts within the knowledge of parties making them, and said that "the law of this state was correctly stated by the counsel of the government, and the attorney general of the state may file information without offering any proofs. No more doubt is there that section 1014 of the Revised Statutes of the United States authorizes the usage of the state to be followed as to the mode of process

against defendants. But this, if, indeed, it refers to anything more than the form of the warrant, could not, by any possibility, include any usage which is expressly prohibited by the constitution of the United States."

The question arose in *Vannatta v. State*, 31 Ind. 210, wherein the court sustained a motion to quash the information, in which the district attorney charged the offense "as he verily believes," and said that a verdict that the defendant is guilty as charged would amount to nothing. It would only show that the district attorney believed that the offense had been committed. Section 15 of the bill of rights of the state of Kansas declared that "the right of the people to be secure in their persons and property against unreasonable searches and seizures, shall be inviolate; and no warrant shall issue but upon probable cause, supported by oath or affirmation, particularly describing the place to be searched, and the person or property to be seized."

Section 12, ch. 128, Laws of Kansas, 1881, provides, among other things, that, "if the county attorney of any county shall be notified by any officer or other person of any violation of any of the provisions of this act, it shall be his duty forthwith to diligently inquire into the facts of such violation, and if there is reasonable ground for his instituting a prosecution, it shall be the duty of such county attorney to file a complaint in writing before some court of competent jurisdiction, charging the suspected person of such offense, and shall verify such complaint by affidavit; but it shall be sufficient to state in such affidavit that he believes the facts stated in such complaint to be true." Upon a case taken to the supreme court of that state, in *State v. Gleason*, 32 Kan. 245, 4 Pac. 363, the supreme court of that state said: "That

said section 15 is little more than the affirmation of the great constitutional doctrine of the common law. Article 4 of the amendments to the constitution of the United States is almost identical with section 15; and Story says that 'this provision seems indispensable to the full enjoyment of the rights of personal security, personal liberty, and private property, * * and its introduction into the amendments was doubtless occasioned by the strong sensibility excited both in England and in America upon the subject of general warrants, almost upon the eve of the American revolution.' " (2 Story, Const. sec. 1902.) And that it must be conceded that section 15 was declaratory of the fundemental rights of the citizen, and was intended to protect him in his liberty and property against the arbitrary action of those in authority. That, so long as that section remained in force, the principles therein declared were to remain absolute and unchangeable rules of action and decision, and that the legislature could not infringe thereon, and the courts must yield implicit obedience thereto, and that the support to a warrant must be something more than hearsay and belief. The court said, further, that an affidavit might be made and presented that the informant was informed and verily believed something, and yet he might have no knowledge or information on the subject except mere hearsay, and yet he could conscientiously make such a declaration, and that such a complaint or information was not one which could be said to be supported by an oath or affirmation; that the complaint thus verified proved nothing. And the argument upon that case is entirely applicable to the state of our law here, since section 5, art. 1, ch. 41, Laws of 1895, sought to make the same provision which was made by the act of the legislature of

Kansas in 1881, since it provided that "all informations shall be verified by the oath of the prosecuting attorney, complainant, or some other person: provided, that when an information in any case is verified by the county attorney, it shall be sufficient if the verification be upon information and belief."

We understand the case of *Com. v. Phillips*, 16 Pick. 211, Shaw, C. J., to be to the same effect. The authority of the fourth article of the amendments to the constitution of the United States, together with the interpretation thereof by the supreme court of the United States, and of the opinions of the supreme courts which we have cited, together with the opinions which have been cited in those cases, enforces upon us the conclusion that the legislature had no power to make this provision, and that an arrest upon a criminal information must be supported by an oath or affirmation from some one who knows of the matter charged, and not upon an oath which is no stronger than information and belief.

The second proposition argued in the assignments of error is that the trial court erred in overruling the application of appellant for a continuance of the case, which was duly excepted to at the time. The information in this case was filed December 1, 1897, and the defendant was arrested at noon on December 2, 1897, and brought into court at 5 o'clock on that day, without the opportunity of consulting counsel, and answered that he was not guilty, when his case was set down for hearing on the following morning at 9 o'clock. His counsel, to whom he telegraphed, reached Perry, where the court was held, at midnight of December 2, and had no access to the information or proceedings in the case until 9 o'clock on the morning of December 3, when the case was set for

trial. His application for a continuance showed the existence of testimony material to his defense. Subpoenas were issued for him on the morning of December 3, as soon as his counsel could get them issued, but the court refused to grant him a continuance or to give him any further time, the United States attorney having announced that he was ready for trial, and the trial was thereupon proceeded with.

The case of *Brooks v. Com.* (Ky.) 37 S. W. 1043, was a prosecution for murder, the indictment having been returned the day after the killing, and the trial set for the fourth day after the commission of the offense. An application for a continuance having been overruled by the trial court, the supreme court said that the continuance ought to have been granted; and this would have been in harmony with the intent of the provisions of the Code, and with the fundamental provision of law that entitled the persons accused of crime to a fair and reasonable opportunity to procure the attendance of witnesses in their behalf.

In *Lawson v. Territory*, 56 Pac. 698, this volume, p. 1, the defendant was indicted on September 20, 1897, for the crime of murder. A demurrer to the indictment was overruled on September 21, 1897, and on the same day he presented an application for a continuance on account of the absence of material witnesses temporarily absent from the Territory, which was overruled, and the defendant put upon his trial. It was held that the refusal to grant such continuance was prejudicial error, and that the period of only one day after the filing of the indictment was not a sufficient length of time in which to prepare for trial.

The case of *Goodson v. U. S.*, 7 Okla. 117, 54 Pac. 434, is to the same effect. We think that there was error upon this ground also, and that the cause should have been continued, and more time should have been given to the defendant to prepare for his trial, upon the showing made in his application for a continuance. The case is therefore reversed, and remanded for further procedings in accordance herewith.

BURFORD, C. J.: I concur in the result, but do not approve the reasoning or the law as stated in the opinion.

All the other justices concurring.