Daniel Neal HOVER, Plaintiff in Error,

v.

The STATE of Oklahoma, Defend-
ant in Error.

No. A–14476.

Court of Criminal Appeals of Oklahoma.

May 13, 1970.

Carroll E. Gregg, of Miskovsky, Sullivan, Embry, Turner & Gregg, Oklahoma City, for plaintiff in error.

G. T. Blankenship, Atty. Gen., Hugh H. Collum, Asst. Atty. Gen., for defendant in error.

BUSSEY, Judge.

Daniel Neal Hover, hereinafter referred to as defendant, was charged by Information in the Court of Common Pleas of Oklahoma County with Operating a Motor Vehicle While Under the Influence of Intoxicating Liquor. He was tried by a jury, found guilty, and sentenced to pay a fine of $100.00 and to serve 20 days in the county jail. From this judgment and sentence a timely appeal has been perfected to this Court.

The record reveals the testimony of three witnesses comprising the State's case. Larry J. Litchford, a member of the Central Oklahoma Citizens Band Patrol (a radio club of Edmond, Oklahoma) testified that on the evening of April 8, 1967, he observed a white, late model Oldsmobile parked on the shoulder of Interstate-35; that he pulled up behind the car with his flashing emergency lights on; that the car abruptly pulled off accross several lanes of traffic and then drove for some distance with its wheels on the center median. Mr. Litchford observed the car for some distance and he gave the tag number of the car to Officer Johnson; that he did not see the driver of the vehicle nor any of its occupants and that the car passed Officer Johnson, who was parked alongside I-35, but did not see or attempt to stop said vehicle. Mr. Litchford further testified that being a member of Oklahoma Citizens Band Patrol did not authorize him to patrol the streets of Oklahoma County.

Officer Johnson testified that he stopped the car that Litchford had identifed after it had run up on the center median; that defendant had a strong odor of alcohol about him and in his opinion, the defendant was under the influence of alcohol. Officer Johnson called Officer Tom LaValley to assist him in the arrest and these two officers were the only two present, and only Johnson saw the defendant drive the car.

The defendant testified, as did his date on the evening in question, that they had attended a fraternity function at Quail Creek Country Club; that he had had nothing to drink on that evening until after dinner. Both witnesses testified he had approximately six Scotch and waters; that his date consumed a Vodka Collins prior to leaving the country club at 11:00 or 11:30 on the night of his arrest. Both witnesses denied that the defendant had driven his automobile in an unusual manner or that he was under the influence of alcohol. Defendant then offered testimony of witnesses as to his truth and veracity and his reputation for the same. One of the witnesses, a fraternity brother, although not present at the fraternity party or at the scene of the arrest, testified that he had had difficulty in locating the automobile operated by the defendant which had been towed in. This witness was not permitted to testify that he had been advised by the attendants at the

garage where the car was stored; that the difficulty in locating it was due to the fact that it had been registered in as a Buick when it was, in fact, an Oldsmobile.

Prior to trial the defendant filed a Motion to Quash the Information for the reason that:

"1. That said Information alleges the commission of a misdemeanor; and

2. That said misdemeanor Information is not verified as required by law and is void on its face."

The record does not indicate that this Motion was ever called to the attention of the court or that a hearing was conducted thereon with a ruling made adverse to the defendant and exceptions taken thereto.

The parties announced ready for trial and at the conclusion of the evidence, the defendant renewed his objection to the Information by way of Demurrer for the reason that the evidence disclosed that Officer Johnson was the arresting officer and that A. M. Hamilton, who had verified the Information, had no personal knowledge of the events on the evening of the arrest, and at most, the verification was based on hearsay information. The Information and Verification appear in the record in the following language:

"In the name and by the authority of the State of Oklahoma, comes now CURTIS P. HARRIS the duly elected, qualified and acting District Attorney in and for Oklahoma County, District Attorney, District No. 7, State of Oklahoma, and on his official oath gives the COMMON PLEAS Court in and for said Oklahoma County, State of Oklahoma, to know and be informed that heretofore, to-wit:

on or about the 9th day of April A.D., 1967, in Oklahoma County, State of Oklahoma DANIEL NEAL HOVER whose more full and correct name is to your informant unknown, then and there being, did then and there wilfully, unlawfully and wrongfully commit the crime of OPERATING A MOTOR VEHICLE WHILE UNDER THE INFLUENCE OF INTOXICATING LIQUOR in the manner and form as follows, to-wit:

That is to say, the said defendant, in the county and state aforesaid, and on the day and year aforesaid, then and there being, did then and there wilfully, unlawfully and wrongfully run, drive and operate a 1966 Oldsmobile Motor Vehicle, bearing 1967 South Dakota License Tage Number 23–2807 at and upon a public street, from an unknown point to a point at S.E. 44th and Interstate Highway # 35, in Oklahoma City, in said county and state, while under the influence of intoxicating liquor; contrary to the form of the statutes in such cases made and provided and against the peace and dignity of the State of Oklahoma.

CURTIS P. HARRIS
District Attorney, District 7
Oklahoma County, Oklahoma
/s/ William C. Page
WILLIAM C. PAGE
Assistant District Attorney

STATE OF OKLAHOMA, OKLAHOMA COUNTY, ss.

I, A. M. Hamilton, being duly sworn on my oath, declare that the statements set forth in the above information are true.

/s/ A. M. Hamilton
A. M. HAMILTON

Subscribed and sworn to before me this 10th day of April, 1967.

DALE SMITH, Court Clerk
/s/ Stella Price
STELLA PRICE
Deputy."

It is counsel's present contention that since Officer Hamilton had no personal knowledge of the facts and circumstances giving rise to the charge, his verification of the Information was void and this conviction must be reversed for that reason.

In the early case of Salter v. State, 2 Okl. Cr. 464, 102 P. 719, wherein the verification was in the following form:

"State of Oklahoma, Carter County—ss:

J. H. Akers being duly sworn on oath declares that the statements set forth in the above information are true as he is informed and verily believes. [Signed.] J. H. Akers.

Subscribed and sworn to before me this 26th day of December, 1907. I. R. Mason, County Judge."

this Court, speaking through the Honorable Judge Doyle, after a lengthy discourse citing the decisions of many jurisdictions including decisions of the Supreme Court, concluded that:

"In the light of the opinions herein quoted, it must be conceded, as a settled principle of American law, that a complaint or information, verified only on information and belief, is insufficient to authorize the issuance of a warrant of arrest; and a warrant so issued is without authority of law, and is wholly void.

* * * * * *

We do not wish, however, to be understood as holding that the information must be sworn to by persons having actual knowledge of the offense charged."

The opinion of Salter v. State, supra, delivered on the 26th day of June, 1909, was closely followed by Moss v. State, 4 Okl.Cr. 247, 111 P. 950, delivered by Honorable Judge Richardson and concurred in by Furman, P. J., and Doyle, J. The facts in this case were that an assistant county attorney sent two men to see if they could purchase beer from the defendant. They were able to make a purchase and an information was filed, verified by the assistant county attorney. During the trial it developed that the affiant had no personal knowledge of the matters charged and his own information was what he had obtained from the report of the two men who had made the purchase. The defendant filed a motion to quash the information on that ground, which motion was overruled by the trial court. Judge Richardson stated in his opinion:

"We think there was no error in the court's ruling. An information which is not verified at all, or which on its face shows that it is verified only on information and belief, should be quashed or set aside on a timely motion for that purpose, for the reason that such verification constitutes no sufficient showing of prob-

able cause. But, where the information is verified in positive terms as true, it constitutes a showing of probable cause, even though it may subsequently develop that the affiant had no personal knowledge of the facts alleged. Such verification makes a prima facie showing, which is all that is required; and on a motion to quash no issue can be made as to the knowledge or want of knowledge of the person who verified the information."

Judge Richardson explained the rationale of the ruling, stating as he did so that:

"* * * in many instances the various and disconnected sources from which fragmentary pieces of evidence must be obtained, conclusive when considered together, but no portion of which is sufficient alone, and the further fact that the circumstances are often such that no one witness in the case can truthfully say that he has personal knowledge that all the facts necessary to be charged in the information are true, it may well be doubted whether the law contemplates that the verification of an information must be made by one having personal knowledge of all the essential facts charged."

The identical question here presented was considered by this Court in Logan v. State, 42 Okl.Cr. 1, 274 P. 39, where a defendant in the trial court filed a Motion to Quash and dismiss the information for the reason that the affiant had no personal knowledge of the facts and the affidavit was made on information and belief. This Court, speaking through the Honorable Judge Davenport, concurred in by Edwards, P. J., and Chappell, J., stated:

"The cases cited by the defendant correctly state the law; in each of these cases the affidavit was made on information and belief. In this case the affidavit to the complaint is positive in its terms, and was not made on information and belief, as argued by the defendant.

This affidavit was sufficient to authorize the issuance of the warrant of arrest, and

was sufficient to preclude an inquiry into the question of fact of the personal knowledge of the affiant as to the facts thus positively sworn to."

There are numerous other cases decided by this Court, both felony and misdemeanors, and they are uniform in their holding that when the verification is positive in its terms, neither an information or preliminary complaint can be attacked on the ground that the affiant had no personal knowledge of the facts contained within the information or complaint.

Counsel for defendant, while recognizing the rule enunciated in Moss v. State, supra, urges that under our decision in Ivy v. State, Okl.Cr., 414 P.2d 1007, we should overrule the unbroken line of decisions which cite the rule enunciated in Moss v. State, supra, with approval. We are of the opinion that the ruling in Ivy v. State, supra, has no application in the instant case. In *Ivy*, where the information charging defendant with driving while under the influence of intoxicating liquor, was supported by an invalid verification because the police officer who allegedly signed the affidavit in support of the information was outside the state at the time the oath was allegedly administered, defendant properly challenged the information's sufficiency in due time, and the county attorney failed to correct the error, we held the defendant's conviction could not be sustained. We were careful to point out in *Ivy* that the ruling enunciated in *Moss* had no application under the facts there presented and it follows that in applying *Moss* in the instant case, the *Ivy* rule is clearly inapplicable here.

In accordance with the authorities above set forth, we are of the opinion that this assignment of error is without merit.

█ Under separate propositions, the defendant contends that the trial court erred in the giving of Instruction # 4 and in refusing to give defendant's Instructions # 2, 3, 5 and 6. We observe that since no objection was interposed to the giving of Instruction # 4, there is nothing preserved for review on appeal, and further, that the instructions, when considered as a whole, fairly and fully state the law applicable to the case. For this reason we hold that these assignments of error are without merit.

█ It is next contended that the trial court erred in refusing to allow one of the defendant's witnesses to introduce evidence of how the car was identified and registered by the garageman who had been called by the Highway Patrol to remove the Hover vehicle from the side of I-35. It is abundantly clear the evidence sought to be proved by this witness was at best based on hearsay evidence gained by the witness from the attendant at the parking lot and was, therefore, inadmissible. For that reason we are of the opinion that the trial court did not err in excluding the same.

█ It is lastly contended that because of the cumulative errors committed during the course of the trial, the punishment imposed should be modified. Having carefully examined the record, we are of the opinion that it is free of any error which would require reversal or modification, and for all the reasons above set forth, the judgment and sentence appealed from is affirmed.

BRETT, Presiding Judge (specially concurring).

Article 2, § 17, Oklahoma State Constitution provides in part:

"No person shall be prosecuted criminally in *courts of record* for felony or misdemeanor otherwise than by presentment or indictment or by information. * * * Prosecutions may be instituted in courts *not of record* upon a duly verified complaint." (Emphasis added.)

Title 22 O.S. § 303, concerning the verification of informations, provides:

"[A]ll informations shall be verified by the oath of the prosecuting attorney, complainant or some other person."

It is observed that the Court of Common Pleas of Oklahoma County was [1] a court of

1. Court of Common Pleas is now a division of the district court.

record; and that plaintiff in error was tried in said court. Consequently, it was required that the misdemeanor charge be filed—under these circumstances—by information. The information was verified in positive terms, and was therefore sufficient to show probable cause, I therefore concur with Judge BUSSEY's holding herein.

NIX, Judge (dissenting).

Daniel Neal Hover, hereinafter referred to as the defendant, was charged by information in the Court of Common Pleas of Oklahoma County with having Operated a Motor Vehicle While Under the Influence of Alcohol. He was tried by a jury, found guilty, and sentenced to pay a fine of $100.00 and to serve 20 days in the county jail.

The record reveals the testimony of three witnesses comprising the State's case. Larry J. Litchford, a member of the Central Oklahoma Citizens Band Patrol (a radio club of Edmond, Oklahoma) testified that on the evening of April 8, 1967, he observed a white, late model Oldsmobile parked on the shoulder of Interstate-35. That he pulled up behind the car with his flashing emergency lights on. That the car abruptly pulled off across several lanes of traffic and then drove for some distance with its wheels on the center median. That he observed the car for some distance and he gave the tag number of the car to Officer Johnson. That he did not see the driver of the vehicle nor any of its occupants. That the car passed Officer Johnson, who was parked alongside Interstate-35, but did not see or attempt to stop said vehicle. Also, that being a member of Oklahoma Citizens Band Patrol did not authorize him to patrol streets of Oklahoma County. Officer Johnson testified he stopped the car that Litchford had identified, after it had run up on the center median. Johnson testified that defendant had a strong odor of alcohol about him and in his opinion, the defendant was under the influence of alcohol. Officer Johnson called Officer Tom LaValley to assist him in the arrest. These two officers were the only two present, and only Johnson saw the defendant drive the car.

The casemade reveals a strange thing regarding the verification on the information, made extremely obvious by the testimony of Johnson and LaValley. The verification was made by "A. M. Hamilton", who was not present at the scene nor did he participate in the arrest in any manner. Officer Johnson was asked the following questions and gave the following answers:

"Q. (BY MR. GREGG) Officer Hamilton didn't take part in this arrest, did he?

A. No.

Q. Never was at the scene and never saw this man, did he?

A. No.

Q. You didn't sign the information in this case—or complaint?

A. I signed the Summons.

Q. Did you sign the information or complaint in this case?

A. No, not this information.

Q. You are the officer that saw the alleged offense committed but you didn't sign the information or complaint in this case?

A. No."

The transcript of the record further established that Hamilton could not have had any knowledge of the offense unless by the way of hearsay, and was in no position to subscribe to the following oath at the bottom of the information:

"STATE OF OKLAHOMA, OKLAHOMA COUNTY, ss.

I, A. M. Hamilton, being duly sworn on my oath declare that the statements set forth in the above information are true.

/s/ A. M. HAMILTON
A. M. HAMILTON

Subscribed and Sworn to before me this 10th day of April, 1967.

DALE SMITH, Court Clerk
/s/ Stella Price
Stella Price, Deputy"

It has been clearly established that an information in a misdemeanor case must be verified in positive terms. This prevents arbitrary information from springing into existence simply because a vindictive prosecutor elects to present them. All informations, except those supported by proof upon oath which constitutes probable cause, were expunged from permissible procedure by this constitutional provision. A thorough discussion of this subject is to be found in the case of Salter v. State, written by the distinguished Judge Doyle, and is to be found in 2 Okl.Cr. 464, page 470–471, 102 P. 719, page 722, wherein it said:

" 'It is plain from this fundamental enunciation, as well as from the books of authority on criminal matters in the common law, that the probable cause referred to, and which must be supported by oath or affirmation, must be submitted to the committing magistrate himself, and not merely to an official accuser, so that he, the magistrate, may exercise his own judgment on the sufficiency of the ground for believing the accused person guilty; and this ground must amount to a probable cause of belief or suspicion of the party's guilt. In other words, the magistrate ought to have before him the oath of the *real accuser*, presented either in the form of an affidavit, or taken down by himself on a personal examination, exhibiting the facts on which the charge is based, and on which the belief or suspicion of guilt is founded.'

"The rule which was established was that the warrant should issue 'only upon probable cause, supported by oath or affirmation of the person making the charge, in which should be stated the facts *within his own knowledge constituting the grounds of such belief or suspicion.*' " (Emphasis ours.)

Article 2, § 17 under our State Constitution provides that prosecution may be instituted in courts not of record, upon a duly verified complaint. We find that the word "verified" is defined by Black's Law Dictionary as follows:

"VERIFICATION: Confirmation of correctness, truth or authenticity by affidavit, oath, or deposition. McNamara v. Powell, [Sup.] 52 N.Y.S.2d 515–527."

To your writer it appears impossible for one without any firsthand knowledge of the offense to verify, in good faith, as to what offense was committed by defendant. Especially would it be so where the record reflects that the affiant is absolutely void of any firsthand information as to the offense. To approve this type of verification would be permitting, by the back door, that which the Constitutional proviso attempted to prohibit.

This Court held in Ivy v. State, Okl.Cr., 414 P.2d 1007, in reference to an alleged verification:

"This appears to be regular in form, and had the defendant failed to offer his motion to quash, he would have waived this defect. *Also, at the time defendant offered his motion, the county attorney could have corrected it, but he did not attempt to do so.* Thereafter, when the court entered its order overruling defendant's motion, which recited: 'being fully advised in the premises', *what initially amounted to a minor error was compounded into a fatal one.*"

In the instant case, defense counsel filed a Motion to Quash the information "because it was not verified according to law and is void upon its face." The record does not indicate this Motion was passed on by the trial judge. Nevertheless, the matter was called to the attention of the court by it being placed of record. Defense counsel demurred on the grounds that there was no verified complaint, contrary to the form of Statutes. The demurrer was overruled by the trial judge.

When this error was first called to the attention of the trial court, the district attorney should have been given an opportunity to amend or produce the affiant to prove his knowledge of the offense. Not to do so left the court with an information which the record proves to be void.

This Court, in speaking of technical points in the *Ivy* case, supra, had this to say:

"We are of the opinion, under these circumstances, that it would be a travesty of justice to overlook this discrepancy as being technical and unimportant. *Such reasoning might well be applied to other instances of misfeasance, or nonfeasance, which consequently cause fundamental error.*"

[The foregoing text is as originally written and handed down by this Court on October 22, 1969, wherein both Presiding Judge Tom Brett, and Judge Hez J. Bussey, Concurred.]

Therefore, I have no alternative but to respectfully dissent to the new opinion rendered by my colleagues on May 13th, 1970. I feel that any oath to verify the commission of a crime should bear such degree of authenticity as that of a search warrant. When one swears to a complaint falsely, he should be subject to prosecution if the allegations therein are not true. I yet fail to understand how one having no knowledge or facts pertaining to an alleged crime could truthfully swear thereto upon hearsay information. I would reverse and remand this cause for a new trial.